IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRYL POWELL | * | |
| Petitioner | * | |
| v | * | Civil Action No.  DKC-16-0378 |
| FRANK B. BISHOP, JR. and | * | |
| THE ATTORNEY GENERAL OF THE STATE OF MARYLAND | * | |
| Respondents | * | |

***

## **MEMORANDUM OPINION**

In response to the Petition for Writ of Habeas Corpus filed in the above-entitled action, Respondents assert that Petitioner Darryl Powell is not entitled to relief because one claim is procedurally defaulted and the remaining claim is based only on state law.  ECF No. 6.  Although this court granted Powell 30 days to file a reply (*see* ECF No. 3 at ¶ 3), he has filed nothing further.  The court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons stated herein, the Petition shall be denied and a certificate of appealability shall not issue.

**Background**

Appellate and Collateral Review

Powell pled guilty to charges of second-degree murder and openly carrying a dangerous weapon with the intent to injure on April 25, 2007, in the Circuit Court for Baltimore City.  ECF No. 1 at pp. 1 – 2.  Powell did not file an application for leave to appeal the guilty plea, but on

March 31, 2014, filed a petition for post-conviction relief alleging in part that he received ineffective assistance of counsel when he was not advised that an appeal needed to be filed within 30 days of the date he plead guilty. *Id*. at pp. 3- 4. On November 21, 2014, the post-conviction court granted relief in part and allowed Powell to file a belated appeal.[1] *Id*. at p. 4. Relief was denied as to the remaining two claims that Powell was denied effective assistance of counsel when counsel entered his appearance at the time of the guilty plea and the plea was not knowingly or voluntarily entered into when the "court failed to conduct a proper waiver of counsel." *Id*. Powell did not file an application for leave to appeal the post-conviction court's denial of relief on those two claims. ECF No. 6 at Ex. 1 and 3.

On December 15, 2014, Powell filed the belated appeal as permitted by the post-conviction court's ruling. ECF No. 6 at Ex. 3. In the application for leave to appeal, Powell asserted through counsel that the trial court erred when it failed to meet the requirements of Maryland Rule 4-215 and allowed Powell effectively to waive his right to the effective assistance of counsel. *Id*. Powell filed a self-represented supplement to the application asserting that his plea was defective because he was overcharged when he was charged with conspiracy to commit murder and first degree murder; and because he was not informed of the minimum sentence for second degree murder. *Id*.

On May 28, 2015, the Maryland Court of Special Appeals summarily denied the application for leave to appeal. ECF No. 6 at Ex. 4. The court's mandate issued on June 30, 2015. *Id*. Powell's conviction was final on September 28, 2015, the date the time for seeking further appellate review in the Supreme Court expired. The instant Petition for Writ of Habeas Corpus was filed on February 10, 2016, and is timely filed under 28 U.S.C. § 2244(d).

---

[1] The instant petition is timely. *See Frasch v. Peguese*, 414 F. 3d 518 (4th Cir. 2005) (holding that state appellate court's consideration of belated application for leave to appeal constituted "direct review" for purposes of 28 U.S.C. § 2244(d) even though order permitting application was obtained via collateral review).

<u>Claims in this Court</u>

Powell raises two claims in his petition. First, he claims that he received ineffective assistance of counsel when counsel entered the case at the time of the guilty plea. ECF No. 1 at p. 6. Powell explains that prior to the guilty plea proceeding he was "effectively unrepresented by counsel" because "his case had been transferred from one attorney to another." *Id*. Powell further states that prior to entering the guilty plea he was being represented by two court-appointed attorneys and neither of those two attorneys were present at the time of the guilty plea. ECF No. 1-1 at p. 1. Powell argues that the mere presence of counsel at the proceeding was not enough to ensure his Sixth Amendment rights were protected and that the results of the proceeding were fair. *Id*. at pp. 3 – 4.

In his second claim, Powell alleges his guilty plea was not made intelligently, knowingly, or voluntarily "because the court failed to conduct a proper waiver of counsel." ECF No. 1 at p. 6. He further asserts that he "effectively waived his right to effective counsel" and that when a criminal defendant waives his right to counsel the court is required to follow the requirements of Maryland Rule 4-215. *Id*. at pp. 6 and 13. Powell states that the rule requires an examination of the defendant on the record, but in this case no examination took place and he did not waive his right to counsel. *Id*. at p. 13. Powell characterizes court appointed counsel Dennis Ley, who was present at the guilty plea proceeding, as "a mere friend of the court" who did not provide constitutionally adequate assistance. ECF No. 1-1 at p. 4.

<u>Trial Court Proceedings</u>

Powell was charged, along with co-defendant Edward Holmes, with the December 31, 2005 murder of Dwight Watson. ECF No. 6 at Ex. 2, p. 15. The evidence the State would have produced had the matter gone to trial included the testimony of an eye-witness to the murder,

off-duty police officer Hikeen Crampton. *Id*. Crampton would have testified that at approximately 10:45 p.m., he was walking in the 2300 block of Ashburton Street in Baltimore City when he witnessed two individuals attacking the victim. *Id*. Crampton phoned in a call for "officer in need of assistance" to the 911 dispatcher and watched as the two individuals, later identified as Holmes and Powell, walked away from where Watson was lying. *Id*. at p. 16. Crampton would have testified that he continued to watch the two suspects and gave verbal directions to responding officers regarding their whereabouts. *Id*.

Watson sustained serious wounds and survived less than an hour after he was taken to Shock Trauma. ECF No. 6, at Ex. 2, p. 16. An autopsy was performed and determined that Watson, who was 51 years old, died as a result of the six stab wounds and two cutting wounds he sustained. *Id*. at p. 18.

Police officers responding to the scene stopped Powell and Holmes who were found in the 2200 block of Braddish Avenue. ECF No. 6 at Ex. 2, p. 16. Recovered in the vicinity was a knife with blood on it. *Id*. Additionally, clothing worn by Powell was seized and submitted to the Baltimore City Police Biology and DNA Laboratory where examinations revealed that the victim's blood was on both the jeans and the coat worn by Powell. *Id*. at p. 19. DNA analysis confirmed the blood matched that of Watson. *Id*.

Following his arrest, Holmes was read and acknowledged his *Miranda*[2] rights, waived those rights, and provided a statement to the police which was tape-recorded. ECF No. 6 at Ex. 2, p. 17. Holmes told police that he and Powell were riding in Watson's car and that Watson was operating as a hack. *Id*. He recalled that he asked Watson to stop so he could relieve himself in an alley and Watson complied. *Id*. Holmes said when he returned to the car he saw Powell stabbing Watson. *Id*.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

In addition to this evidence, the State was prepared to provide testimony from Keith Branch, Powell's cellmate at Baltimore City Booking, who was interviewed by Baltimore City detectives on January 26, 2006.  ECF No. 6 at Ex. 2, p. 18.  Branch identified Powell's picture in a photographic array and told police he was the person who killed Dwight Watson.  *Id*.  He related that Powell told him that "he was the person that did the  . . . last murder for 2005."  *Id*.  Branch further told police that Powell said that he and a friend "caught a hack" on the west side of town when Powell's friend asked him to stop so he could urinate.  *Id*.  According to Branch, Powell said after Holmes left the car, he decided he also had to urinate.  *Id*.  Powell told Branch that when he returned, Powell and Holmes got into an argument with Watson.  *Id*.  Powell related to Branch that Watson said something he didn't like so he hit him in the face.  *Id*.  Then a physical fight started and Powell took out a knife.  *Id*.  Powell told Branch he was trying to cut Watson's fingers off and before he realized it, Watson was dead.  *Id*.

Prior to taking Powell's guilty plea, there was a plan to postpone the proceedings because Powell's appointed panel attorney, Joan Frazier, could no longer represent him due to a conflict of interest.  ECF No. 6 at Ex. 2, p. 2 and pp. 11 – 12, 14.  By the time of the proceeding, Frazier had become employed by the Public Defender's office and Powell's co-defendant was represented by counsel from that office.  *Id*. at p. 2, *see also* ECF No. 6 at Ex. 3, p. 2.  The second panel attorney, Steven Sheinen, could not make the hearing date and the State's Attorney was going to ask for a postponement.  ECF No. 6 at Ex. 2, p. 2.  The three month postponement was not sought when Powell made it known to the court he was unhappy with the plan and "said he wants to cop now."  *Id*. at p. 3.  After a recess in the proceedings, another attorney, Dennis Ley, was appointed by the court to represent Powell to accommodate his request to move forward with the proceedings.  *Id*. at p. 14.

5

The record reflects that a plea agreement was made with the State whereby if Powell "were to plead guilty to the amended first count, the charge would be second degree murder as well as to Count II which charges wear, carry a weapon openly with the intent to injure." ECF No. 6 at Ex. 2, p. 4.  Powell would be "subject to a 30 year sentence on the second degree murder count as well as a three year concurrent sentence on the weapons count." *Id*.  In exchange for his guilty plea, the State dismissed the count of the indictment that charged Powell with conspiracy to commit first degree murder.  *Id*.  Powell indicated that this explanation of the plea agreement was also his understanding of what would occur if he pled guilty.  *Id*.

Following the explanation of the agreement, Powell was placed under oath and informed the court of his age (19) and the highest grade he completed (eleventh grade).  ECF No. 6 at Ex. 2, p. 5.  Powell's counsel explained the nature and elements of the crime to which he was pleading guilty; the State's burden of proof if the matter had gone to trial; Powell's right to testify and to compel any witnesses he may have to testify at trial on his behalf and the grounds for appellate review that would be waived. *Id*. at pp. 5 – 14.  Relevant to the claims asserted in this court, counsel advised Powell of the grounds for appellate review that he was waiving and stated:

> MR. LEY: The third ground is did you have effective assistance of counsel. That means, did you have a lawyer who advised you of everything that was going on, explained your case and who evaluated your case, explained all your options and let you know that you make an intelligent decision about how you wanted to resolve this case.  Do you understand that?
>
> Now you've been represented by Joan Frazier, is that correct?
>
> THE DEFENDANT:  Yes, sir.
>
> MR. LEY:  And you've just met me today, is that right?
>
> THE DEFENDANT:  Yes.

      MR. LEY:  But you understand that Ms. Frazier can't represent you anymore because of the conflict of interest?

      THE DEFENDANT:  Yes, sir.

      MR. LEY:  But when she represented you, did you go over everything with her in this case?

      THE DEFENDANT:  Yes.

      MR. LEY:  And did she basically answer all your questions and tell you what you should do and suggest whether you wanted to go to trial or whether you wanted to plead guilty and all the options that were available to you?

      THE DEFENDANT:  Yes, sir.

      MR. LEY:  Are you satisfied that you know what you're doing today?

      THE DEFENDANT:  Yes, sir.

      MR. LEY:  Are you satisfied with the services of Ms. Frazier?

      THE DEFENDANT:  Yes, sir.

      MR. LEY:  So the last ground that you could ask the Court of Special Appeals to look at this case is is (sic) was the plea voluntary which is why we're going through all this because Judge Stewart has to know that you're doing this of your own free will and that nobody's forced you or pressured you or threatened you or done anything to make you plead guilty, except offer you this plea agreement.  So I'm going to ask you, is this what you want to do today?

      THE DEFENDANT:  Yes, sir.

ECF No. 6 at pp. 11 – 13.

    Powell then indicated he did not have any questions of Mr. Ley regarding the nature of the proceedings and said, "I basically know what's going on."  *Id*. at p. 13.  Powell again confirmed that he understood the proceedings and had no questions when the court asked him similar questions.  *Id*. at pp. 13 – 14.  In addition, the court reiterated that the reason the proceedings were not postponed and Mr. Ley was brought into the case was to accommodate Powell's request to move forward and Powell indicated his agreement.  *Id*. at pp. 14 – 15.  The

court then concluded that Powell was entering the guilty plea "freely, voluntarily, knowingly and intelligently." *Id*. at p. 15.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, ___, 131 S.Ct. 1388, 1398 (2011); *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:  1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v.*

*Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[3] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id*. (quoting *Murray*,

---

[3] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U. S. 298, 314 (1995).

## Analysis

In the application for leave to appeal filed by counsel following Powell's post-conviction decision granting him the right to file a belated appeal, only one ground for review was put forth: whether the trial court erred in failing to meet the requirements of Maryland Rule 4-215 when it allowed Powell effectively to waive his right to effective counsel. ECF No. 6 at p. 1. He argued that when the plea hearing took place there was no attorney present "that had entered their appearance in the case" and that he was "required to accept the representation of an attorney who happened to be present in the court room that day," who had no knowledge of the case. *Id*. at p. 2. Maryland Rule 4-215 requires the court to examine the defendant on the record to determine if a waiver of counsel is knowing and voluntary. *Id*. at pp. 2 – 3. Powell filed a self-represented application for leave to appeal, claiming that the guilty plea was not knowingly, intelligently or voluntarily made because he "was never apprised of the minimum sentence he could receive for second degree murder." ECF No. 6 at Ex. 3, p. 9. The claims presented to this court for review concern the failure to comply with Md. Rule 4-215 and whether the guilty plea was made intelligently, knowingly, and voluntarily "because the court failed to conduct a proper waiver of counsel." ECF No. 1-1 at p. 1- 4; ECF 1 at p. 6.

Respondents concede that Powell's claim regarding Maryland Rule 4-215 has been raised to all appropriate state courts for review. ECF No. 6 at p. 20. Respondents assert, however, that

the claim is one concerning only state law which does not infringe on federal law or a Constitutional right. *Id.*

The mandatory nature of Md. Rule 4-215 is a requirement created by state law. *See e.g.*, *Richardson v. State*, 381 Md. 348, 367, 849 A.2d 487, 498 (2004) (characterizing Rule 4-215 as a "bright line rule that requires strict compliance."). To the extent the rule was violated, it does not state a cognizable claim for federal habeas relief. "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 561 U.S. 1, 1 (2011). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937 (1979).

The record of the state court guilty plea proceeding does not reflect that waiver of Powell's right to counsel was a matter to be resolved. Powell was continuously represented by counsel, both of whom Powell confirmed gave him advice regarding the case against him. Powell's assertion that Ley was not acting as counsel is belied by the transcript of the plea proceeding which reflects that Powell's request was the impetus for the proceeding to take place on that date and Ley explained all relevant matters on the record to Powell in depth. ECF No. 6 at Ex. 2. Federal habeas relief is unavailable on this ground.

Powell's claim that he received ineffective assistance of counsel because he was not apprised of the minimum sentence he could receive for second degree murder was not raised in an application for leave to appeal denial of post-conviction relief.[4] ECF No. 1 at p. 4; ECF No. 6 at Ex. 1 and 3. Because the claim was raised in post-conviction proceedings and was not

---

[4] Powell did not appeal the post-conviction court's decision denying relief on two of the claims raised.

appealed, Powell would be procedurally barred from raising this claim in state proceedings now. *See* Md. Code Ann., Crim. Proc. § 7-106(a) (provision for finding an allegation of error finally litigated); *id*. at § 7-106(b) (waiver provisions under Maryland Post-Conviction Act). The claim is procedurally defaulted for purposes of federal habeas relief.

A procedurally defaulted claim may not be addressed by this court absent cause for the default and prejudice that would result from failing to consider the claims on the merits, or that failure to consider the claim would result in the continued confinement of one who is actually innocent (miscarriage of justice). *See Murray*, 477 U.S. at 495 – 96. In the instant case, it is clear that Powell cannot make a credible claim of actual innocence and he does not assert that he is innocent of the charges. Nor can Powell establish "cause" for the default as he was represented by counsel and does not allege he was somehow prevented from appealing the denial of post-conviction relief on this ground.

Even assuming Powell could establish cause for the default, it is clear from the record that Powell was informed in open court, on the record, that the sentence he would receive for the second degree murder charge was 30 years. In light of the evidence proffered by the State had Powell gone to trial, it is clear that the conviction and sentence Powell received was lenient and unlikely to be rendered by a jury hearing that evidence. Thus, Powell cannot establish that any perceived deficient performance by counsel prejudiced him to such a degree that the result of the proceedings would have differed had he elected to go to trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (ineffective assistance of counsel claim requires both deficient performance and prejudice resulting from the performance). The prejudice prong of *Strickland* requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A

strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.  Powell cannot sustain this burden on the record before this court.  Federal habeas relief is denied as to this claim.

In addition to determining whether habeas relief is warranted, this court must consider whether a certificate of appealability should issue.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  *See* 28 U.S.C.§ 2253(c)(2).

A separate Order follows.

November 2, 2016                            _____/s/_____
                                            DEBORAH K. CHASANOW
                                            United States District Judge